UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**MICHAEL GILLAM** : **DOCKET NO. 14-cv-2631**
   **D.O.C. # 320955**    **SECTION P**

**VERSUS** : **UNASSIGNED DISTRICT JUDGE**

**GREGORY WISE ET AL.** : **MAGISTRATE JUDGE KAY**

### REPORT AND RECOMMENDATION

Before the court are Motions for Summary Judgment [docs. 49, 51] filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants Angela Easom ('Easom") and Gregory Wise ("Wise"), respectively, in response to the amended complaint [doc. 11] filed pursuant to 42 U.S.C. § 1983 and under state law by plaintiff Michael Gillam ("Gillam").

For the following reasons, **IT IS RECOMMENDED** that the motion brought by Wise [doc. 51] be **GRANTED IN PART** and **DENIED IN PART**, and that the motion brought by Easom [doc. 49] be **GRANTED**.

### I.
#### BACKGROUND

Gillam is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at Allen Correctional Center ("ACC") in Kinder, Louisiana, and his complaint relates to events that occurred at that facility. *See* doc. 11. Gillam alleges that he was improperly restrained by Wise, an ACC officer, on February 14, 2014. *Id.* at 3–4, 7. Gillam contends that Wise filed a disciplinary report against him in retaliation for his

(Gillam's) previous complaints about cell assignments. *Id.* at 7. Gillam alleges that this report placed him in danger from other inmates on his tier because it resulted in their loss of the "tier challenge" for that week. *Id.* He states that when he complained to Wise of the tier challenge loss on February 14, 2014, Wise aggressively restrained Gillam, "handcuff[ing] [him] behind his back and rais[ing] his arms in an unnatural position that caused his hand to break in the lower thumb area." *Id.* He also alleges that Barry Edwards, another ACC officer and a codefendant in this matter, was present and failed to intervene. *Id.*

Gillam states that X-rays were taken by an unknown technician on the same date, and confirmed that he had a broken hand. *Id.* at 8. However, he contends that Angela Easom, the health administrator/medical unit supervisor, failed to respond with timely medical care and that he was instead placed in isolation without adequate treatment until his orthopedic consult nineteen days later. *Id.* at 4, 8. He alleges that the delay in treatment resulted in mental distress and that he still suffers from restricted movement in his thumb. *Id.* at 9.

After pursuing administrative remedies, Gillam filed suit in this court on September 2, 2014. Doc. 1; *see* doc. 1, att. 2. In his amended and verified complaint he alleges that Wise and Easom, among others, have violated the Eighth Amendment by subjecting him to cruel and unusual punishment. Doc. 11, p. 9. He also seeks to hold them liable on tort claims of assault and battery, and medical malpractice.[1] *Id.* In relief for these claims he seeks $20,000 in monetary damages from each defendant as well as a declaratory judgment. *Id.* at 10–11.

Easom and Wise have now filed motions for summary judgment on all of the claims against them. Docs. 49, 51. The time limits for responding have run, but Gillam has submitted no opposition. *See* doc. 56 (extending response deadline); doc. 60 (denying motion for stay).

---

[1] He also raises "[s]tate tort claim[s]" of pain and suffering and mental distress, but these are obviously statements of his damages rather than independent causes of action. *See* doc. 11, p. 9.

-2-

## II.
## LAW & ANALYSIS

### A. *Legal Standards*

#### 1. *Summary Judgment Standard*

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id*. Ordinarily, summary judgment may not be granted merely because no opposition has been filed. *See Luera v. Kleberg Cnty., Tex.*, 460 Fed. App'x 447, 449 (5th Cir. 2012) (per curiam).

Once the movant makes this showing, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law. *Celotex Corp.*, 106 S.Ct. at 2553. There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). Furthermore, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). However, the nonmovant must

submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511.

### *2. Section 1983*

Gillam brings his Eighth Amendment claims under 42 U.S.C. § 1983. Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. In order to hold defendants liable under 42 U.S.C. § 1983, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *West v. Atkins*, 108 S.Ct. 2250, 2254–55 (1988). Thus, if the claim does not rise to the level of a constitutional violation, it is not cognizable under § 1983.

### *B. Claims against Wise*

In support of his motion for summary judgment, Wise has provided a disciplinary report showing that Gillam was restrained for refusing to obey commands and then striking another correctional officer, Sergeant Rayford Noel, twice in the face with a closed fist on January 12, 2014, approximately one month before the incident giving rise to this suit. *See* doc. 51, att. 4. He has also provided an occurrence report showing that Gillam and another inmate admitted on February 10, 2014, that they had been involved in a physical altercation that day, which resulted in the other inmate involved having blood on his face. Doc. 51, att. 5. Gillam stated that the incident began when the other inmate stepped on him while climbing down from his bunk and did not say, "Excuse me." *Id.* Both inmates were then placed on pre-hearing detention for fighting. *Id.* Finally,

Wise provides affidavits from himself and codefendant Barry Edwards, both of whom were on the scene when Gillam's hand was injured. Doc. 51, atts. 6, 7.

Wise and Edwards both declare that they were aware of Gillam's history of attacking other correctional officers and inmates. Doc. 51, att. 6, p. 1; doc. 51, att. 7, p. 1. Wise provides the disciplinary report he wrote after Gillam's altercation with his cellmate, and declares that after he wrote Gillam up, Gillam told him that he was "gonna get [him] somehow." Doc. 51, att. 6, pp. 1, 3. On the day of the incident, Wise recalls that Gillam "became very upset and began cursing at [him]" when he learned that his tier had lost the tier challenge, resulting in another disciplinary report.[2] *Id.* at 2, 4. Gillam states that, in response to his complaint about the tier challenge, Wise "handcuffed [him] behind his back and raised his arms in an unnatural position that caused his hand to break in the lower thumb area." Doc. 11, p. 7. He also contends that Edwards "was present and failed to intervene to protect [Gillam]." *Id.* According to the radiologist report, Gillam sustained a transverse fracture of his thumb with slight lateral displacement.[3] Doc. 51, att. 3, p. 2.

Through their affidavits Wise and Edwards present a different version of events. They state that Edwards, not Wise, handcuffed Gillam after his outburst and then Edwards and Wise escorted Gillam to another tier. Doc. 51, att. 6, p. 2; doc. 51, att. 7, p. 1. While Edwards was attempting to

---

[2] The disciplinary report shows that Gillam pleaded guilty to a disciplinary infraction based on this incident. Doc. 51, att. 6, p. 4. We therefore accept it as true.

[3] Wise alleges that the records show that he "suffered only a slight lateral displacement of the thumb." Doc. 51, att. 1, p. 9. However, the radiologist report actually states that the X-ray shows a "[t]ransverse [f]racture of diametaphyseal junction of metacarpal of thumb [with] slight (2-3 mm) lateral displacement of distal fragment. (This appears acute/subacute)." Doc. 51, att. 3, p. 2. Accordingly, "slight" cannot be fairly read to describe the injury as a whole. We therefore reject Wise's claim that the injury, being first described as a fracture, was *de minimis*.

Wise also alleges that, given Gillam's prior fights, there is insufficient evidence that the fracture resulted from the contact by either Wise or Edwards as opposed to Gillam's fight with another inmate four days earlier. Doc. 51, att. 1, p. 10. He bases this contention on the reference to the injury appearing "acute/subacute," and notes that the McGraw-Hill Concise Dictionary of Modern Medicine defines a "subacute" condition as one that "develops more slowly than an acute process—often 1 to 3 days." *Id.* However, the radiologist report does not indicate that it is any more likely that the injury was subacute rather than acute. Given the type of contact alleged by Gillam and the injury that was recorded later that same day, these allegations are insufficient to create an issue of material fact under the standards outlined above.

remove the handcuffs at the cell door, they state, Gillam became hostile and attempted to pull away. Doc. 51, att. 6, p. 2; doc. 51, att. 7, p. 1. This led to Edwards (again, not Wise) exerting "minor force" to prevent Gillam from pulling his (Edwards') hands into the cell. Doc. 51, att. 6, p. 2; doc. 51, att. 7, p. 1. Gillam then submitted and allowed Edwards to remove his handcuffs. Doc. 51, att. 6, p. 2; doc. 51, att. 7, p. 1. At no time, Edwards and Wise maintain, did either one bend or squeeze Gillam's hands or raise them above his head. Doc. 51, att. 6, p. 2; doc. 51, att. 7, p. 1.

As stated above, Gillam has filed no opposition to the motions for summary judgment. However, he presented his version of the events in the complaint under 28 U.S.C. § 1746, which provides certain guidelines for unsworn declarations. Doc. 11, p. 12. Declarations made under § 1746 are a statutory exception to the "rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). As noted above, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves*, 120 S.Ct. at 2110. Accordingly, conflicting accounts between the parties as to an issue of material fact are insufficient to support a grant of summary judgment. *See, e.g.*, *Stewart v. Guzman*, 555 Fed. App'x 425, 432 (5th Cir. 2014).

### a. *Eighth Amendment violation*

Gillam first contends that Wise subjected him to cruel and unusual punishment by restraining him in the manner that led to his broken hand. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. AMEND. VIII. While the Eighth Amendment's protections extend to the incarcerated, "[p]unishment rises to the level of cruel and unusual only if it involves an 'unnecessary and wanton infliction of pain.'" *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1999)

(quoting *Estelle v. Gamble*, 97 S.Ct. 285, 291 (1976)). Thus, when a prison official is accused of using excessive force, the core judicial inquiry is whether the force was used "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992) (quotations omitted). The Supreme Court has identified several factors relevant to this inquiry, including: (1) the extent of injury suffered; (2) the need for the use of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of the response. *Id.* (citing *Hudson v. McMillian*, 112 S.Ct. 995, 999 (1992)). In weighing the *Hudson* factors, the court should remember "that prison officials may have had to act quickly and decisively," and the amount of constitutionally permissible force "must be judged by the context in which that force is deployed." *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (quotations omitted).

Wise contends that, even accepting Gillam's version of events as true, there is no showing of a constitutional violation under the factors described above. We agree. Gillam's injuries were confined to a very small area of his body. Although he alleged in his amended complaint, a little over a year after his injury, that he still suffered from restricted movement in the injured thumb, he has provided no medical evidence and no other indicator of disability. Under the second factor, it is clear from both accounts that Gillam was behaving defiantly around the time that either Wise or Edwards went to handcuff him. Given his recent history of assaulting a correctional officer and fighting with a fellow inmate, as well as his threat to Wise that day, we are readily persuaded that some amount of force was once again required and that officers reasonably perceived a threat when he became unruly. Based on Gillam's history of violent behavior at the facility, it appears that the amount of force used was not out of proportion to what was required. Finally, under Gillam's

version of events there is no indication that Wise made any effort to temper his response. However, in light of our findings on the other factors, Wise has met his burden in showing that the use of force could not qualify as an Eighth Amendment violation. Accordingly, he is entitled to summary judgment on this claim.

### b. Tort claims

Gillam also alleges that Wise is liable to him under a state law claim of assault and battery. "A harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such contact, is a battery." *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987). "Assault is, speaking generally, threat of a battery. . . . An assault is a threat of such harmful or offensive contact." *Fournette v. Tran*, 792 So.2d 870, 873 (La. Ct. App. 4th Cir. 2001). In a suit for damages resulting from an intentional tort, the plaintiff must prove the prima facie elements of the tort. *E.g.*, *Griffith v. Young*, 62 So.3d 856, 859 (La. Ct. App. 2d Cir. 2011). The defendant may then seek to escape liability by showing that his actions were privileged or justified. *Id.*

In opposition to this claim, Wise contends that: "(1) the minimal use of force was reasonable and justified, and (2) plaintiff has failed to provide any evidence that Gregory Wise hade a harmful or offensive contact, and (3) plaintiff has failed to provide any evidence that Gregory Wise **intended** to cause plaintiff to suffer such a contact." Doc. 51, att. 1, p. 12 (emphasis in original). Taking Gillam's account as true, as under the previous claim, we disagree. While Gillam's complaint did not allege sufficient facts to show that the use of force was constitutionally excessive, he did state that an intentional and harmful contact was applied to him by Wise. The uncontested facts do not provide enough evidence to support Wise's burden in maintaining a defense under tort law. Accordingly, summary judgment must be denied as to this claim.

### C. *Claims against Easom*

Gillam raises claims under the Eighth Amendment and state medical malpractice law against Easom relating to the care he received after his injury on February 14, 2014. Easom is a registered nurse and was formerly employed as the health administrator at ACC. Doc. 49, att. 4, p. 1. As the records show and Gillam alleges in his verified complaint, his hand was X-rayed on the same day of the incident. Doc. 11, p. 8; doc. 49, att. 3, p. 2. The radiologist report indicated that he had a transverse fracture in his thumb. Doc. 49, att. 3, p. 2. Gillam alleges that Easom failed to intervene and ensure that timely care was provided to stabilize the injury. Doc. 11, p. 8.

Gillam's medical records show that he received a weeklong prescription for ibuprofen from Health Services on February 14, 2014. Doc. 49, att. 3, pp. 3–4. On February 17, he was given a new, month-long prescription for an increased dosage. *Id.* at 4–5. On that same date, an orthopedic consult was entered for scheduling. *Id.* at 5. At some point at or prior to February 20, 2014, Gillam also received a splint for his injured hand, which he continued to wear until the orthopedic consult.[4] *Id.* at 6, 11. He was also seen at Health Services on February 24 and 27, 2014, but there is no indication that his treatment changed. *Id.* at 7. On March 2, 2014, he completed a health care request form, complaining that his hand was still hurting and the ibuprofen was not working. *Id.* at 8. He was seen the next day by a nurse, who instructed him to continue the medication as ordered and informed him that the orthopedic consult would take place "very soon." *Id.* The consult occurred on March 5, 2014, at University Hospital & Clinics in Lafayette, Louisiana, and Gillam was given a plaster cast to stabilize the injury. *Id.* at 11; doc. 11, p. 8.

---

[4] By the Gillam's own admission in his grievance form, which he completed on February 17, 2014, it appears that the splint might have been issued on the day the injury was sustained. *See* doc. 49, att. 5, p. 1 ("So the nurse then wrap[ped] my hand and told me a doctor would see me Monday.")

### 1. *Eighth Amendment claim*

In order to prevail on a claim that his medical care or lack thereof violated the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must establish that the deficiency of care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 97 S. Ct. 285, 292 (1976). Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur Cty., Texas*, 245 F.3d 447, 458–59 (5th Cir. 2001). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). In other words, the official must have a subjective intent to cause harm. *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003).

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). In *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981), the court stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a course of treatment was unsuccessful or that a prisoner disagrees with the treatment chosen does not elevate a claim to a constitutional dimension. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1992). Furthermore, the fact that a plaintiff continues to suffer pain from his

condition is insufficient to establish that a constitutional violation has occurred. *See Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

Additionally, supervisory officials may not be held liable under § 1983 under the doctrine of *respondeat superior*. *See Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992). To be liable, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).

Here it is clear that Easom is named in a supervisory capacity. Gillam does not allege that she had any personal involvement in his treatment, nor do his records show any involvement. Even if he could show that Easom had personal involvement in his care or that she implemented a policy that resulted in the 19 day delay between injury and orthopedic consult, Gillam could not come close to establishing deliberate indifference from these facts. The records show that pain medication and a splint were provided in the interim, and given the fact of Gillam's incarceration, a delay of less than three weeks before seeing a specialist does not show a deficiency of care that was sufficiently harmful to show a subjective intent that harm occur. Accordingly, summary judgment should be granted as to this claim.

### 2. *Medical malpractice*

As Easom notes, the fact that Gillam is an inmate at ACC renders his tort claims subject to the administrative review requirements set forth under Louisiana law. Although prisoners with medical malpractice claims against state facilities and employees thereof are exempted from the medical review panel requirement, they must still exhaust applicable administrative remedies. LA. REV. STAT. §§ 40:1237.2(A), 1237.1(E) (part of the Louisiana Malpractice Liability for State Services Act, formerly cited as LA. REV. STAT. § 40:1299 *et seq.*); *see Walker v. Appurao*, 29 So.3d

575, 576–77 (La. Ct. App. 1st Cir. 2009). The applicable administrative remedy is set forth in § 325 of the Louisiana Administrative Code, and the process begins when the prisoner "complet[es] a request for administrative remedy . . . in which he briefly sets out the basis for his claim, and the relief sought." LA. ADMIN. CODE § 22:I.325(G)(1)(a)(i); *see, e.g.*, *Donahue v. Wilder*, 2016 WL 552588, *5 (M.D. La. Feb. 10, 2016).

Here Gillam completed two-step administrative review of a complaint initiated on February 14, 2014, in which he complained of Wise's actions. Doc. 1, att. 2. He does not provide any evidence of exhaustion for his medical care claims. However, he asserted in his amended complaint that he had "completed exhaustion of an additional claim arising from the same incident, Case Number ALC-2014-132, that was just decided on November 19, 2014 but not received by the plaintiff until January 8, 2015." Doc. 11, p. 8. Easom attaches the requests and responses under this case number as Exhibit N to her motion for summary judgment. Doc. 49, att. 5. These documents show that the initial complaint was filed on February 17, 2014, complaining of treatment up to that point, and making no mention of Easom.[5] *Id.* at 1–2. The only legal theory raised in this complaint was Gillam's Eighth Amendment claim; there is no mention of medical malpractice. *Id.* Gillam reiterated that his claim was based on the Eighth Amendment and once again failed to mention Easom or medical malpractice in his reasons for seeking review of the first step response. *See id.* at 3.

The Middle District of Louisiana has held that an Eighth Amendment claim based on medical care was sufficiently exhausted by the petitioner's administrative complaint complaining in detail of his treatment but failing to identify the specific legal theory, where the allegations

---

[5] Although the initial complaint was filed earlY in Gillam's treatment, both the first and second step responses show that the full course of the treatment was considered rather than just the care he had received up to that time. *See* doc. 49, att. 5, pp. 3, 4.

-12-

satisfied Eighth Amendment standards. *Donahue*, 2016 WL 552588 at *6; *see Donahue v. Wilder*, No. 3:15-cv-499, doc. 15, att. 1 (M.D. La.) (copy of administrative remedy request completed by petitioner). In this case, however, not only did Gillam base his administrative remedy request on a legal theory with a more stringent standard than mere negligence/malpractice, but he also failed to name the individual he claims is responsible under this claim in the instant suit.[6] Accordingly, the medical malpractice claim against Easom cannot be deemed exhausted by the administrative remedy procedure cited above. This claim is therefore subject to dismissal without prejudice for lack of subject matter jurisdiction, and so summary judgment must be granted as to it.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment brought by Wise [doc. 51] be **GRANTED IN PART** and **DENIED IN PART**, and that the Motion for Summary Judgment brought by Easom [doc. 49] be **GRANTED**. Accordingly, the constitutional claims brought against these defendants should be **DISMISSED WITH PREJUDICE** and the medical malpractice claim brought against Easom **DISMISSED WITHOUT PREJUDICE**, while the tort claim brought against Wise should remain pending before this court.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed

---

[6] Under the federal exhaustion requirement for prisoner suits, a grievance that fails to mention the defendant's name can suffice to exhaust the claim where the prisoner uses sufficient descriptors, such as "the guard[] in the shower room on a certain date," to identify him. *See Pitre v. Smith*, 2015 WL 7195805, *3 (M.D. La. Nov. 16, 2015) (quoting *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004)). Here an unnamed nurse who was on duty on February 14, 2014, is mentioned in the original request for administrative remedy. *See* doc. 49, att. 5, p. 1. However, there is no indication that this might be Easom, who is a registered nurse but is not alleged to have ever personally treated Gillam. *See* doc. 11, pp. 8–9; doc. 49, att. 4.

factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 10th day of August, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE